UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMA SARKISIAN, | ) NO. CV 04-7770-MAN |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION AND ORDER |
| | ) |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

Plaintiff filed a Complaint on September 22, 2004, seeking review of the denial by the Social Security Commissioner ("Commissioner") of Plaintiff's claim for supplemental security income benefits ("SSI"). On October 28, 2004, the parties filed a "Consent to Proceed Before a United States Magistrate Judge," pursuant to 28 U.S.C. § 636. The parties filed a Joint Stipulation on June 3, 2005, in which: Plaintiff seeks an order reversing the Commissioner's decision denying benefits and remanding for the payment of benefits or, alternatively, remanding the case to the Commissioner for a new hearing; and Defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for SSI on April 17, 2002. (Administrative Record ("A.R.") 110-22.) Plaintiff claims to have been disabled since January 1, 2001, due to a left nerve problem with her neck, back pain, severe headaches, dizziness, diabetes mellitus, hypertension, body temperature fluctuations, and memory problems. (A.R. 50, 111.) Plaintiff has past relevant work experience as dance instructor, garment folder, and home attendant. (A.R. 50, 127, 135.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration. On June 26, 2003, Plaintiff, who was represented by an attorney, appeared and testified at a hearing before Administrative Law Judge David Agatstein ("ALJ"). (A.R. 285-308.) In a September 22, 2003 decision, the ALJ found that Plaintiff was not disabled, and the Appeals Council subsequently denied Plaintiff's request for review of that decision. (A.R. 49-61, 33-35.)

**SUMMARY OF ADMINISTRATIVE DECISION**

In his September 22, 2003 decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset of disability. (A.R. 59.) He found that Plaintiff has, in combination, impairments that are "severe," consisting of obesity, osteoarthritis of the lumbosacral spine, a history of diverticulosis, a history of breast lumps, and benign positional vertigo, but she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (A.R. 60.) The

ALJ found that Plaintiff has the following residual functional capacity:

> [Plaintiff can] perform work at the medium level of exertion. She is able to lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk for six hours, and sit for six hours in an eight-hour workday. She is unable to climb or balance and should not work at heights or with hazardous machinery (20 CFR 416.945).

(*Id.*) The ALJ found that "[Plaintiff's] allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision." (*Id.*) The ALJ further found that Plaintiff can perform her past relevant work as a "garment folder" and a "home attendant." (*Id.*) Thus, the ALJ concluded that Plaintiff was not disabled. (*Id.*)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id*. at 1041; *see also* Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges three disputed issues. First, Plaintiff contends that the ALJ erred in finding that she can return to her past relevant work as a "home attendant," because her past work in this capacity did not rise to the level of "substantial gainful activity" and, therefore, was not "relevant" for the purposes of the ALJ's five-step analysis. (Joint Stip. at 3-5, 9-10.) Second, Plaintiff contends that the ALJ erred in relying upon the vocational expert's testimony that Plaintiff can perform her past relevant work as a "garment folder." (Joint Stip. at 11-13, 15-16.) Third, Plaintiff contends that reversal and an award of benefits is mandated, because she is "disabled" under Rule 203.01 of

4

the Medical Vocational Guidelines (the "Grids").  (Joint Stip. at 17-19.)

**A.   The ALJ Did Not Err In Finding That Plaintiff Could Perform Her Past Relevant Work As A "Garment Folder."**

According to the Dictionary of Occupational Titles ("DOT"), a "garment folder" is defined as a person who:

> Folds garments for bagging or boxing, following guide marks on table or using folding board (cardboard or metal form). Secures folds with metal clips.  May insert tissue paper between folds.  May make final inspection of garment.  May pack garments in bags and boxes [PACKAGER, HAND (any industry)].  May be designated according to garment folded as Shirt Folder (garment; knitting).

DOT 789.687-066.

According to the DOT, a "hand packager" is defined as a person who:

> Packages materials and products manually, performing any combination of following duties:  Cleans packaging containers. Lines and pads crates and assembles cartons. Obtains and sorts product.  Wraps protective material around product. Starts, stops, and regulates speed of conveyor. Inserts or pours product into containers or fills containers from spout or chute.  Weighs containers and adjusts quantity.  Nails, glues,

>or closes and seals containers. Labels containers, container tags, or products. Sorts bundles or filled containers. Packs special arrangements or selections of product. Inspects materials, products, and containers at each step of packaging process. Records information, such as weight, time, and date packaged. May stack, separate, count, pack, wrap, and weigh bakery products and be designated Bakery Worker (bakery products). May apply preservative to aircraft and spaceship parts, package parts for shipment, and be designated Wrapper and Preserver (aircraft mfg.). May be designated according to whether high-production or small-lot packaging as Fancy Packer (retail trade; wholesale tr.); Packaging-Line Attendant (any industry); specific packaging duty performed as filling, wrapping, packing, labeling, and container cleaning as Sack Sewer, Hand (any industry); kinds of equipment used or product packaged as Candle Wrapper (fabrication, nec); Carton Stapler (any industry); or whether packager performs associated duties as final assembly before packaging product as Novelty-Balloon Assembler And Packer (rubber goods). May weigh and package meat in retail store and be designated Meat Wrapper (retail trade). . . .

DOT 920.587-018.

At the hearing, in response to the ALJ's question regarding what Plaintiff did in her job at a clothing factory, she simply testified that: "I've been ironing. I've been putting together clothes." (A.R. 292.) In her April 17, 2002 Work History Report, Plaintiff described

1  her work in the garment industry, as follows:  "I did the finishing[,]
2  hang the dresses on the hangers, arrange them.  Fold the t-shirts, put
3  them in the boxes, take them to the cars to be delivered."  (A.R. 138.)
4  She further stated that she carried the boxes ten to 20 yards, and that
5  the heaviest weight she lifted was "100 pounds or more" and the weight
6  she frequently lifted was "50 pounds or more."  (*Id.*)

8     The vocational expert characterized Plaintiff's past relevant work
9  at the clothing factory as a "garment folder."  (A.R. 306.)  The ALJ
10 then asked the vocational expert the following hypothetical question:

12     Assume a hypothetical individual 64 years of age, a person who
13     is not literate in the English language at a commercially-
14     competitive level, and who has the work experience that you've
15     just described. [This person] has the medical limitations
16     described by Dr. Maxwell in his testimony, the ability to
17     perform medium work with restrictions from unprotected
18     heights, balancing, climbing and other fall hazards. Can such
19     a person perform [Plaintiff's] past work *as she performed it*
20     *or as performed in the economy?*

22 (A.R. 306; emphasis added.)   In response, the vocational expert
23 testified that Plaintiff could perform her past relevant work as a
24 "garment folder," as well as a "home attendant."  (*Id.*)

26     Plaintiff contends that, because she carried 50 pounds frequently
27 and 100 pounds occasionally at her prior job in the clothing factory, as
28 noted in her Work History Report, she can no longer perform her past

7

relevant work as its exertional demands are in excess of the "light" level, the exertional level required for a "garment folder" job. (Joint Stip. at 11.) Plaintiff further contends that her prior job at the clothing factory should have been classified as both a "garment folder" and "hand packager," and she can longer perform that job, because the job of "hand packager" requires "balancing," which is precluded by her residual functional capacity. (Joint Stip. at 12.) In addition, she contends that the vocational expert improperly failed to provide an explanation for his deviation from the requirements set forth in the DOT in finding that she can perform her past relevant work at the clothing factory. (*Id.*)

In arguing that her work at the clothing factory was improperly classified as solely that of a "garment folder," Plaintiff contends that: the DOT makes a "very careful and exquisite distinction," in that a "garment folder fold[s] garments 'for' bagging or boxing but the person [who] puts garments 'in' bags or boxes is a hand packager"; and there is a "frank divergence between the vocational expert's testimony and the facial content of the DOT cautioning that a garment folder [who] also packs garments will have classification as a hand packager." (Joint Stip. at 12, 16.) As set forth above, the DOT notes a possible overlap in the duties of a "garment folder" and a "hand packager." According to the definition of a "garment folder," some of the duties of a "garment folder" *may* include some packaging duties, which also may fall within the job description of a "hand packager." However, as is plain from its text, the DOT's definition of "garment folder" does not, as Plaintiff suggests, carve out an "exception" pursuant to which a person who folds garments *for* boxing or bagging is not a "garment

8

folder" if that person also places garments *into* boxes or bags.

Plaintiff contends that she "may be able to perform part of her past work in the garment industry folding garments," but that "she could not perform her past work as a packer of garments" (Joint Stip. at 12.) Thus, she implicitly concedes that she can perform her past relevant work as a "garment folder," even if she can no longer perform the additional, potential packaging duties that overlap with a "hand packager" job. To the extent Plaintiff contends that her former job was primarily that of a "hand packager," rather than a "garment folder," her assertion is not supported by the DOT job descriptions. While there is a cross-reference in the definition of "garment folder" to "hand packager, any industry," the definition of "hand packager, any industry" includes many duties which Plaintiff did not describe as part of her job at the clothing factory, such as "record[ing] information" about the garments, "weigh[ing] and adjust[ing]" the garments, and packing the garments in a "special arrangement." *See* DOT 920.587-018.

Thus, the vocational expert's testimony classifying Plaintiff's past relevant work at the clothing factory as the job of a "garment folder," but not also a "hand packager," is consistent with the definition of "garment folder" in the DOT, which includes folding garments and possibly placing them in boxes or bags. *See* Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001)(the DOT is "the best source for how a job is generally performed"). Accordingly, the ALJ's classification of Plaintiff's past relevant work at the clothing factory as solely a "garment folder" is not error.

Furthermore, even assuming that Plaintiff can no longer perform her actual prior job at the clothing factory, that assumption does not necessarily lead to the conclusion that she is unable to perform her past relevant work as a "garment folder." The vocational expert testified that Plaintiff could perform her past relevant work as a "garment folder" in response to the ALJ's question whether Plaintiff could perform that job either "as she performed it or as performed in the economy." (A.R. 306.) Generally, a vocational expert's opinion regarding a claimant's ability to perform her past relevant work, without specifying whether such finding is based on the claimant's ability to perform her actual prior job or the prior job as it is generally performed, is sufficient for a step four finding. Pinto, 249 F.3d at 844 ("We have never required explicit findings at step four regarding a claimant's past relevant work both as generally performed and as actually performed. The vocational expert merely has to find that a claimant can or cannot continue his or her past relevant work as defined by the regulations. . . ."; citations omitted).

In a case similar to the instant case, Orteza v. Shalala, 50 F.3d 748 (9th Cir. 1995), the Ninth Circuit affirmed the ALJ's conclusion that a claimant could perform his past relevant work, because he could perform positions similar to his past job as a file clerk, even though he could not perform his previous job. In Orteza,

> The ALJ concluded that Orteza could not return to his previous position at the hospital chartroom to the extent it requires heavy lifting and bending, but that he could perform similar file clerk work which would be defined as "light work"

10

>        under 20 C.F.R. § 404.1567(b). The ALJ credited Orteza's testimony of pain and fatigue to the extent he determined Orteza could not do medium or heavy work. Both the testimony of the vocational expert and the Dictionary of Occupational Titles indicate that file clerk jobs usually require only "light work." Thus, we conclude that the ALJ's findings are supported by substantial evidence.
>
>        The ALJ's findings that Orteza could perform "light work" as a file clerk and that such work is available, legally supports the Secretary's determination that Orteza is not disabled, even if Orteza could not return to the specific job he had previously held because of the unusually heavy bending and lifting required there. 20 C.F.R. § 404.1520(e)(claimant not disabled if able to perform same type of work done in past); Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986)(claimant has burden of proving that he cannot return to his former type of work, not just his particular job).

*Id*. at 751. Here, as in Orteza, despite the fact that Plaintiff may not be able to perform her prior job at the clothing factory based on her assertions that such position required both work at the "heavy" level and balancing, substantial evidence supports the conclusion that she nevertheless can perform her past relevant work as a "garment folder" as the job is *generally performed*.[1]

---

[1] For this same reason, Plaintiff's assertion -- relying on Valencia v. Heckler, 751 F.2d 1082, 1086 (9th Cir. 1985), and Bonilla v. Secretary of Health, Ed. & Welf., 671 F.2d 1245, 1246 (9th Cir. 1982) -- that the ALJ improperly culled out the "easiest part of" Plaintiff's job

Because the ALJ appropriately found that Plaintiff can perform the job of a "garment folder" as it is generally performed, Plaintiff's argument -- that the vocational expert's testimony is flawed because he did not explain the deviation from the DOT's requirements of the job of "hand packager," which requires occasional balancing -- is unavailing. There is no conflict in the requirements set forth in the definition of "garment folder" in the DOT and Plaintiff's residual functional capacity, as such position requires work at the "light" level and involves no balancing; therefore, there was no need for further explanation from the vocational expert. *Cf*. Social Security Ruling 00-4p (the ALJ must elicit a reasonable explanation for any conflict between the occupation evidence provided about the claimant and the information set forth in the DOT).

The ALJ properly characterized Plaintiff's past relevant work at the clothing factory as the job of a "garment folder," and Plaintiff's residual functional capacity did not preclude the performance of that job as it is generally performed. Accordingly, the ALJ's determination that Plaintiff is not disabled because she can perform her past relevant work as a "garment folder" is supported by substantial evidence. The Court, therefore, does not reach Plaintiff's alternative argument (set forth as Issue One) that the ALJ erred in determining that Plaintiff is not disabled because she can perform her past relevant work as a "home attendant."

---

duties to find that she could perform the job of "garment folder" is without substance.

B.   **Plaintiff's Argument That She Should Be Found "Disabled" Under The Grids Is Unavailing**.

Plaintiff contends that Rule 203.01 of the Grids dictates a finding that she is disabled. (Joint Stip. at 17.) Under Rule 203.01, a claimant who is "closely approaching retirement age" (ages 60 to 64), with "marginal" or no education, whose previous work experience is "unskilled" or "none," is disabled. 20 C.F.R. Pt. 220, App. 2. Based on the limitation provided by the ALJ in his hypothetical question to the vocational expert that Plaintiff is not "not literate in the English language at a commercially-competitive level," Plaintiff contends that she falls within the provisions of this rule, because she "lacks the language capacity to function as a literate person in the workplace" and should be considered "illiterate" under this Rule. (Joint Stip. at 17.)

Pursuant to 20 C.F.R. § 416.964(b)(1), "illiteracy" is defined as "the inability to read or write." A claimant may be found "illiterate" or "unable to communicate in English" if she is "either illiterate in English or unable to communicate in English or both." <u>Silveira v. Apfel</u>, 204 F.3d 1257, 1261 (9th Cir. 2000). In addition, 20 C.F.R. § 416.964(b)(5) explains that: "we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do." Pursuant to 20 C.F.R. 416.964(b)(2), a "marginal education" is defined as the "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs," and is "generally [considered as] formal schooling at a 6th grade level or less."

Here, in his credibility finding, the ALJ rejected Plaintiff's contention that she could not communicate in English. Specifically, the ALJ commented upon Plaintiff's claimed inability to communicate in English, as follows:

> [Plaintiff] also gave inconsistent reports regarding her ability to communicate in the English language. In her Disability Report, [Plaintiff] alleged that she is unable to speak, read, or write more than her name in English (Exhibit 1E, p. 1). She also denied being able to speak English in a subsequent Daily Activities Questionnaire (Exhibit 7E, p. 2). [Plaintiff] made her home in the United States on January 8, 1991 [Exhibit 1D, p. 2) and has worked in this country. She became a naturalized citizen of the United States on July 25, 2001. She failed to produce any evidence that she qualified for any of the exceptions to the English language requirements for naturalization (see 8 CFR 312.1). The claimant reportedly has a driver's license and owns a car, which she does not drive (Exhibit 1D, p. 4; Exhibit 6E, p. 3).

(A.R. 58.)

In rendering a credibility determination, the ALJ is entitled to, and did, cite significant inconsistencies in Plaintiff's allegations, statements, and testimony that undermined her claimed inability to communicate in English. *See* <u>Benton v. Barnhart</u>, 331 F.3d 1030, 1040 (9th Cir. 2003)(ALJ may reject a claimant's testimony upon: "(1) finding evidence of malingering, or (2) expressing clear and convincing

14

reasons for doing so"); *see also* Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997)(internal conflicts in claimant's statements are a proper basis for discrediting allegations regarding limitations). Plaintiff testified that, although she prefers to speak Russian, Georgian, or Armenian, she does speak English and can write and read in English "[i]f I need to take care of my legal matters or read some papers." (A.R. 290.) In addition, she has a higher education, which she received in Armenia at a teacher's institute, and she operated her own dance studio from 1998 to 2001 in Glendale and had approximately 20 to 30 students. (A.R. 127, 136, 289-91.) Furthermore, as the ALJ recognized, Plaintiff is a naturalized citizen and, therefore, as part of the naturalization process, would have been tested on a minimum knowledge of the English language.[2] Thus, it was not error for the ALJ to disbelieve that Plaintiff was "unable to communicate," and to decline

---

[2] In order to become a citizen, a person must "demonstrate" "an understanding of the English language, including an ability to read, write, and speak words in ordinary usage in the English language." 8 U.S.C. § 1423(a)(1).

Plaintiff contends that she was exempt from the English language requirements for naturalization. (Joint Stip. at 18.) Specifically, Plaintiff cites 8 U.S.C. § 1423(b)(2)(A), which sets forth that the requirements of understanding the English language "shall not apply to any person who, on the date of the filing of the person's application for naturalization . . . is over fifty years of age and has been living in the United States for periods totaling at least twenty years subsequent to a lawful admission for permanent residence." Here, however, Plaintiff testified that she became a citizen on July 25, 2001, after coming to live in America in 1990, and therefore had been living in the United States for only 11 years prior to her naturalization. (A.R. 289.) Thus, she could not have met the requirements for this English language exemption for naturalization, because she did not live in the United States for at least 20 years prior to the date of the filing of her naturalization application.

to find that Plaintiff was "illiterate."[3]

To the extent that the ALJ's posed as a limitation in his hypothetical question to the vocational expert that Plaintiff is "not literate in the English language at a commercially-competitive level," his inclusion of this limitation in the hypothetical question does not render it a "finding" of illiteracy. The ALJ did not set forth in his residual functional capacity finding that Plaintiff was "illiterate," as he clearly rejected Plaintiff's claimed inability to communicate in English.

Moreover, the vocational expert considered this limitation when considering whether Plaintiff can perform the job of "garment folder," a job requiring the minimum language skills of Level 1.[4] *See* 20 C.F.R § 416.964(b)(5)(the ability to communicate in English should be considered when evaluating what work a claimant can do). Based on the

---

[3] In addition, the ALJ did not err in declining to find that Plaintiff, who received a higher education in Armenia, has a "marginal education," which is defined in 20 C.F.R. § 416.964(b)(2) as a sixth grade education or less.

[4] Level one language skills is defined as:

READING: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.

WRITING: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.

SPEAKING: Speak simple sentences, using normal word order, and present and past tenses.

DOT 789.687-066. Here, Plaintiff's application papers and testimony indicates that she can comply with these minimal language requirements.

16

vocational expert's testimony that Plaintiff could perform her past relevant work as a "garment holder," even assuming that Plaintiff had greater limitations than those set forth in the ALJ's residual capacity finding, the ALJ appropriately accounted for any deficiency in Plaintiff's English language skills in determining that Plaintiff was not disabled.  Accordingly, Plaintiff's argument that she is disabled under Rule 203.01 is unavailing.

**CONCLUSION**

Accordingly, for the reasons stated above, the Commissioner's decision denying benefits is AFFIRMED, consistent with this Memorandum Opinion and Order.  Judgment shall be entered affirming the decision of the Commissioner, consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: March 29, 2006.

>                 /s/
>         MARGARET A. NAGLE
> UNITED STATES MAGISTRATE JUDGE